UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SOMPHANE SIPASEUTH,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No.  5:26-cv-07942-BLF   (JSC)

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order (TRO). (Dkt. No. 3.) On July 30, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for Temporary Restraining Order immediately releasing him from custody and enjoining Respondents from re-detaining him absent prior notice and a pre-deprivation hearing. (Dkt. Nos. 1, 2, 5.[1])  Upon review of the TRO, the general duty judge ordered a response from the government.  Having reviewed the response (Dkt. No. 9) and for the following reasons, the Temporary Restraining Order ("TRO") is **GRANTED**.

**BACKGROUND**

According to the record before the Court, Petitioner is a citizen of Laos who was admitted to the United States as a refugee in 1983 when he was 10 years old.  (Dkt. No. 5 at ¶¶ 1-2.) Petitioner adjusted his status to that of a lawful permanent resident in 1986.  (*Id.* at ¶ 2.)  Between 1992 and 1996 Petitioner received three criminal convictions for auto burglary, battery with serious bodily injury, and battery.[2]  (*Id.* at ¶ 3.)  After completing a four-year prison term,

_____

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

[2] The Alameda County Superior Court recently granted Petitioner's motions to vacate two of his

Petitioner was issued a Notice of Appear in immigration court and was transferred to Immigration and Customs Enforcement (ICE) custody. (*Id*. at ¶ 4.) He was charged with deportability under Immigration and Nationality Act section 237(a)(2)(A)(iii) as an immigrant who was convicted of an "aggravated felony." (*Id*.) Petitioner was ordered removed in 1998, "[b]ut, according to the records, deportation to Laos was 'not possible' at that time, and on August 10, 2000 Mr. Sipaseuth was released from ICE custody and placed on an Order of Supervision." (*Id*.) Petitioner has complied with his order of supervision regularly checking in with ICE.[3]

On July 30, 2026, Petitioner was called in for a routine ICE check-in. (*Id*. at ¶ 8.) At the meeting, "the officer surprised him, letting him know they had obtained travel documents for his return to Laos." (*Id*.) The officer advised Petitioner they were "going to cancel his order of supervision and place him into custody." (*Id*.) He was not provided prior notice or an opportunity to be heard and when his counsel advised the ICE officer of his intent to file a motion to reopen, "the ICE officer let counsel know that they were going to proceed to detain the Petitioner anyway." (*Id*.)

This Petition was filed later the same day. (Dkt. No. 1.) The Petition was accompanied by a TRO. (Dkt. No. 2.) The general duty judge ordered Respondents to file a response to the TRO by noon, July 31, 2026. (Dkt. No. 3.)

### LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

convictions and he intends to file a motion to reopen immigration proceedings and reinstate his permanent resident status. (*Id.* at ¶ 7.)

[3] According to the Petition, Petitioner "had one subsequent arrest in 2010 where he was charged with two counts of 'pool selling / bookmaking' [and] [t]he records are unclear what the final disposition was regarding this arrest." (*Id*. at ¶ 5.)

United States District Court
Northern District of California

"[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**DISCUSSION**

Petitioner makes two legal claims: (1) his re-detention without notice violates 8 C.F.R. §§ 241.4(l) and 241.13(i); and (2) his re-detention violates his procedural due process rights under the Fifth Amendment.[4] Petitioner has established at least serious legal questions going to the merits of both claims.

The regulations at issue, 8 C.F.R. §§ 241.4(l) and 241.13(i), permit the government to revoke a noncitizen's release and return the individual to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). This same section requires that "[u]pon revocation, the [noncitizen] will be [1] notified of the reasons for revocation of his or her release," and that [2] [t]he Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Similarly, section

---

[4] The government's jurisdictional argument is unpersuasive for the reasons set forth in *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *2 (N.D. Cal. May 22, 2026).

241.4(l)(1) requires "[u]pon revocation, the [noncitizen] will be [1] notified of the reasons for revocation of his or her release or parole" and that [2] "[t]he [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."

While the government's opposition brief argues Petitioner was provided notice his supervision order had been revoked because the government obtained a travel document and that he was given an interview, this representation is inconsistent with Petitioner's counsel's declaration. (Dkt. No. 2-2, Landerholm Decl. at ¶ 2 ("we were called in by the officer, we were informed that they had acquired travel documents for his deportation to Laos for the first time since he was ordered removed in 2000, and that they were going to take him into custody.").) There are additional inconsistencies. The documents attached to government's response all say "refuse to sign" where the detainee signature should be, and although Petitioner was accompanied by counsel, the documents do not indicate counsel was provided a copy of the documents (the relevant checkboxes are blank). (Dkt. No. 9-1 at Exs. 5, 6; Dkt. No. 10-1, Ex. 3, 4.) The narrative attached to the "record of deportable/inadmissible alien" also makes no reference to Petitioner's attorney despite his attestation that he had accompanied Petitioner. (*Compare* Dkt. No. 10-1, Ex. 2 *with* Dkt. No. 2-2 at ¶ 2.) Finally, the deportation officer, Jafet Sanchez Bartolo, who submitted the declaration attaching these documents and attests "Petitioner was further provided an informal interview pursuant to the Order of Supervision regulations 8 C.F.R. 241.4(I); 8 C.F.R. 241.13(i)," is not the same individual whose signature is on Petitioner's documents. (Dkt. No. 10-1 at ¶ 4; Dkt. No. 10-1, Exs. 2-5 (completed by Officer Tahir # 13633).) The facts here are similar to those in *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304 (N.D. Cal. May 22, 2026), wherein the court granted a TRO following an evidentiary hearing because there was insufficient—and inconsistent—evidence the petitioner had been provided procedurally adequate notice, informal interview, or opportunity to respond. The Court thus follows *Saeteun* and concludes on the present record Petitioner has raised serious legal questions as to the government's compliance with its own regulations regarding re-detention.

The Court also concludes Petitioner has raised serious legal questions as to his due process

4

claim. Petitioner has a substantial interest in his continued freedom protected by the Fifth Amendment. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (stating the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody."). "Respondents cannot rely on 8 U.S.C. § 1231(a)(6), without any procedural safeguards, as the authority for Petitioner's re-detention after they released him an order of supervision and have been supervising him for [over 20 years]." *Edgar Luis M.R. v. Warden*, No. 1:26-CV-04296-TLN-AC, 2026 WL 2149764, at *3 (E.D. Cal. July 27, 2026). Petitioner's release from ICE custody on an order of supervision for over 20 years reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. The remaining *Mathews* factors likewise weigh in Petitioner's favor such that he has demonstrated serious legal questions going to the merits of his procedural due process claim. *See, e.g., Ayurzana v. Lyons*, No. 5:26-CV-02238-KES, 2026 WL 1370140, at *2 (C.D. Cal. May 13, 2026) (applying *Mathews* factors and finding due process violation under similar circumstances); *Edgar Luis M.R.*, 2026 WL 2149764, at *3 (same).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. Petitioner is the primary caregiver for his brother who is paraplegic. (Dkt. No. 2-2 at ¶ 3.) Further, the likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh

United States District Court
Northern District of California

United States District Court
Northern District of California

heavily in favor of granting temporary relief.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight.  *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).  The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779.  The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention.  *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner **immediately, but no later than Saturday, August 1, 2026,** from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioner's release by 10:00 a.m. Monday, August 3, 2026.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on August 13, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Petitioner's motion by no later than 2:00 p.m. August 6, 2026. Any reply SHALL be filed by 2:00 p.m. August 10, 2026. The assigned Judge may modify this schedule as appropriate.

(6) This Order shall remain in effect until 5:00 p.m. on August 14, 2026 or as otherwise directed by the Court.

//

//

//

7

This Order disposes of Docket No. 2.

**IT IS SO ORDERED.**

Dated: July 31, 2026

JACQUELINE SCOTT CORLEY for
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

8